IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America, ) Criminal Action
Plaintiff, ) No. 02-cr-131
vs. ) SENTENCING
Ana Belen Montes, ) Washington, DC
) October 16, 2002
Defendant. )

---

TRANSCRIPT OF SENTENCING
HELD BEFORE
THE HONORABLE JUDGE RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE

---

A P P E A R A N C E S

For the Plaintiff: Ronald L. Walutes, Jr.
U.S. Attorney's Office for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22304
(703) 299-3910
Email: Ron.walutes@usdoj.gov

For the Defendant: Plato Cacheris
Trout Cacheris & Janis, PLLC
1350 Connecticut Avenue, NW
Suite 300
Washington, DC 20036
(202) 464-3303
Email: Pcacheris@troutcacheris.com

Proceedings reported by William McAllister.

---

Transcribing Court Reporter:
Janice Dickman, RMR, CRR, CRC
Official Court Reporter
United States Courthouse, Room 6523
333 Constitution Avenue, NW
Washington, DC 20001
202-354-3267

THE COURTROOM DEPUTY: Criminal case 2002-131, United States of America versus Ana Belen Montes. Ronald Walutes for the government. Plato Cacheris for the defendant. Ms. Pike for the probation office.

THE COURT: Good morning, Counsel. Good morning Ms. Montes. Good morning, Ms. Pike.

Ms. Montes is before the Court this morning to be sentenced after having entered a plea to the offense of conspiracy to commit espionage. Are there any preliminary matters?

(No response.)

THE COURT: Are you ready to proceed?

MR. CACHERIS: As Your Honor stated, Ms. Montes is appearing before the Court pursuant to an agreement entered into between the government and Ms. Montes. She has fulfilled the obligations that were imposed upon her by that agreement. In fact, the government has stated to the Court that she has cooperated without reservation and that they are fully satisfied with her cooperation. In cases of this nature, Your Honor, I think that's unusual, complimentary to this defendant. Accordingly, we would ask that the agreed-upon sentence be imposed by the Court. Thank you.

THE COURT: Ms. Montes, would you like to speak first, or would you like to speak after you hear from the government?

THE DEFENDANT: After.

THE COURT: All right. Have a seat, please.

MR. WALUTES: Your Honor, first, the government also joins in Mr. Cacheris's request that the Court impose the agreed-upon 11(e)(1)(C) sentence. The government is fully satisfied and stands by that representation.

Second, as I understand it, the defense is going to ask this Court for -- that the defendant be placed in an institution within BOP that's geographically on the east coast, and we have no objection to that, understanding that BOP ultimately would have the decision as to where this defendant is housed.

Finally, Your Honor, we rest on our written submission that was made earlier last week, or the middle of the last week. But we make two final comments today. First, we want to commend the excellent work of the counter-intelligence agents in this country that uncovered this covert agent, compliment their skills to be able to do so.

Second, I would only add that it is really irrelevant what political beliefs this defendant holds. What is relevant is that she betrayed her family, she betrayed her colleagues, and she betrayed this country. And, ultimately, what would be far more relevant is an apology today.

THE COURT: Thank you.

Ms. Montes?

THE DEFENDANT: An Italian proverb perhaps best describes the fundamental truth I believe in: All the word is one country. In such a world country, the principle of loving one's neighbor as much as one's self seems, to me, to be the essential guide to harmonious relations between all of our nations' neighborhoods. This principle urges tolerance and understanding for the different ways of others. It asks that we treat other nations the way we wish to be treated; with respect and compassion. It is a principle that, tragically, I believe we have never applied to Cuba.

Your Honor, I engaged in the activity that brought me before you because I obeyed my conscience, rather than the law. I believe our government's policy toward Cuba is cruel and unfair; profoundly unneighborly. And I felt morally obligated to help the island defend itself from our efforts to impose our values and our political system on it.

We have displayed intolerance and contempt for Cuba for most of the last four decades. We have never respected Cuba's right to make its own journey towards its own ideals of equality and justice. I do not understand why we must continue to dictate how the Cubans should select their leaders, who their leaders cannot be, and what laws are appropriate in their land. Why can't we let Cuba pursue its own internal journey the way the United States has been doing for the last two centuries?

My way of responding to our Cuban policy may have been morally wrong. Perhaps Cuba's right to exist free of political and economic coercion did not justify giving the island classified information to help it defend itself. I can only say that I did what I thought right, to help counter a very grave injustice.

My greatest desire is to see amicable relations emerge between the United States and Cuba. I hope my case in some way will encourage our government to abandon its hostility towards Cuba and to work with Havana in a spirit of tolerance, mutual respect, and understanding. Today we see more clearly than ever that intolerance and hatred by individuals or governments spreads only pain and suffering.

I hope for U.S. policy that it's based, instead, on neighborly love, a policy that recognizes that Cuba, like any other nation, wants to be treated with dignity and respect; wants to be treated not with contempt. Such a policy would bring our government back in harmony with the compassion and generosity of the American people. It would allow Cubans and Americans to learn from and share with each other. It would enable Cuba to drop its defensive measures and experiment more easily with changes. And it would permit the two neighbors to work together and with other nations to promote tolerance and cooperation in our one-world country, in our one and only world homeland. Thank you, Your Honor.

THE COURT: Thank you. I'm not going to say much. I think it all has been said. Today is a very sad day. It's a very sad day for you, Ms. Montes, for your family, for your loved ones, and for every American who suffers the betrayal of a fellow countryman. In my mind, if you cannot love your country, then, at the very least, you should do it no harm. Instead, you decided, with deliberation, to put your fellow Americans, specific individuals and the nation as a whole in harm's way. For this you must pay the penalty.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Ms. Ana Belen Montes, is hereby committed to the custody of the Bureau of Prisons for 300 months on Count 1.

The Court finds that Ms. Montes does not have the ability to pay a fine and, therefore, waives the imposition of a fine in this case. So no alternative sentence is imposed in that regard.

It is further ordered that Ms. Montes shall pay a special assessment of $100. That special assessment fee is due immediately and shall be paid to the Clerk of the Court of the United States District Court for the District of Columbia. Within 30 days of any change of address -- mailing or residence -- Ms. Montes shall notify the Clerk of the Court of this district of the change until such time as the financial obligation is fully paid. It is also ordered that Ms. Montes

shall forward to the United States any contributions made to the Thrift Savings Account or interest in any asset or interest in any assets that she owns or over which she exercises control, directly or indirectly, to any property that is traceable to, derived from, fungible with, or a substitution for property that constitutes the proceeds of her espionage activities.

She further waives all interest in any listed asset in any administrative or judicial forfeiture proceedings and consents to the entry of orders of forfeiture for the noted property. Ms. Montes also waives her right to challenge any forfeiture carried out by the government.

Upon release from imprisonment, Ms. Montes shall be placed on supervised release for a term of five years. This is in relation to her plea in Count 1.

Within 72 hours of release from custody she shall report in person to the probation office in the district to which she is released.

She shall submit to periodic drug tests as required under 18 U.S.C. 3563(a) and 3583(b). She shall abide by the general conditions of supervision that have been adopted by the U.S. Probation Office. Ms. Montes shall also comply with the following special conditions:

With regard to community service, Ms. Montes shall perform 500 hours of community service as approved and directed

by the probation office.

Regarding computer search, she shall submit to periodic, unannounced examinations of her computer by the probation office and/or authorized probation service representatives, which may include retrieval and copying of all data from her computer and any internal or external peripherals to ensure compliance with this condition, and/or removal of such equipment for the purpose of conducting a more thorough inspection. She shall allow installation of any hardware or software systems to monitor her computer use and shall pay for the cost of such monitoring equipment.

Further, Ms. Montes shall not possess or use any data encryption technique or program and shall refrain from accessing, via computer, any material that relates to the activity to which the defendant was engaged when committing the instant offense. She shall maintain a daily log of all addresses accessed by way of any computer, other than those authorized for employment, and she shall make the log available to the probation office for review.

Ms. Montes shall consent to third-party disclosure to any employer or potential employer concerning any computer-related restrictions that are imposed upon her.

Further, Ms. Montes shall not possess or use a computer that has access to any online computer service at any location, including her place of employment, without the prior

written approval of the probation office. Online computer service includes, but is not limited to, any internet service provider, bulletin board system, or any other public or private computer network.

Ms. Montes shall be prohibited from incurring new credit charges, opening additional lines of credit or negotiating or consummating any financial contracts without the approval of the probation office. In addition, she shall not seek or accept, personally or through another person or entity, any benefit from a foreign government or agent. And should such a benefit be received by Ms. Montes, it shall be assigned as a benefit to the United States.

With regard to employment restrictions, Ms. Montes shall be restricted from engaging in employment, consulting, or association with the United States government or any foreign government for the duration of her supervision.

Ms. Montes shall provide the probation office with her income tax returns, authorizations for release of credit information, and any other business or financial information in which she has a control or interest.

She shall have no direct or indirect contact with any foreign government or agents, except with the express permission of the DIA and Federal Bureau of Investigation.

The probation office shall release the presentence investigation report to all appropriate agencies in order to

execute the sentence of this Court. Treatment agencies shall return the presentence report to the probation office upon her completion or termination from treatment.

Ms. Montes, you have the right to appeal this sentence. Should you choose to appeal, you must lodge a notice of appeal within ten days after the Court has entered judgment. If you are unable to afford the cost of an appeal, you may ask the Court for permission to file an appeal *in forma pauperis*, that is, without any cost to you.

It is further my impression that, Mr. Cacheris, that you are seeking, on behalf of Ms. Montes, a recommendation that the Bureau of Prisons designate her to an institution somewhere in the proximity of the east coast, is that correct, sir?

MR. CACHERIS: That is correct. We recognize it is only a recommendation by the Court. We would ask the Bureau of Prisons be Tallahassee or, in the alternative, Danbury.

THE COURT: And that is your client's wishes. It is so ordered.

Are there any other matters that anybody wants to raise at this time?

(No response.)

THE COURT: Are there any other matters which probation wishes the Court to address for the record.

THE PROBATION OFFICER: No.

THE COURT: Good luck.

* * *

CERTIFICATE

I do hereby certify that the foregoing is a true, correct and complete transcript of the proceedings reported by William McAllister in this matter on October 16, 2002, and transcribed from the audio recording to the best of my ability, and that said transcript has been compared with the audio recording.

Dated: July 22, 2022

/s/______________________

Janice Dickman
Official Court Reporter
333 Constitution Avenue
Washington, DC 20001
202-354-3267